UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Shelby J. Nieman,

Plaintiff,

v.

Greater MN Family Services, Stephanie Wimmer, Little Falls Police Department, Rich Heurung, Robert Nieman, Vicki Nieman, and Morrison County Social Services,

Defendants.

Case No. 26-cv-2961 (ECT/LIB)

**OPINION AND ORDER**

---

This action is before the Court on Plaintiff Shelby J. Nieman's "Complaint[] for Violations of Civil Rights," ECF No. 1 ("Complaint"), and Application to Proceed *In Forma Pauperis*, ECF No. 2 ("IFP Application"). For the following reasons, action will be dismissed and the IFP Application will be denied as moot.

I

Ms. Nieman, a resident of Little Falls, Minnesota, commenced this action *pro se* on June 15, 2026. *See* Docket.[1] The Complaint names seven Defendants: (1)–(2) Greater MN Family Services ("GMFS"), a private family-services agency, and Stephanie Wimmer, a therapist who supervised Ms. Nieman there; (3)–(4) the Little Falls Police Department

[1] Several days before filing this action, Ms. Nieman voluntarily dismissed a materially similar action that she had brought in Minnesota state court. *See* Order for Dismissal Without Prejudice, *Nieman v. Greater MN Family Servs.*, No. 49-CV-26-459 (Minn. Dist. Ct. June 4, 2026); ECF No. 1-2 at 82.

("LFPD") and Rick Heurung, an LFPD officer; (5) Morrison County Social Services ("MCSS"); and (6)–(7) Robert and Vicki Nieman, Ms. Nieman's adoptive parents. *See* Compl. at 1–2.[2]

Ms. Nieman's allegations span more than a decade. As the I understand it, around 2013, a former partner (the father of her elder son, "H.N.") stalked and harassed her. *See* Mem. at 1–2. She alleges that she reported this conduct to the LFPD (and specifically to Officer Heurung), but that the response was inadequate. *See id.* at 2. Ms. Nieman also alleges that in 2017, H.N. told her that Robert and Vicki Nieman had sexually abused him while he was in their care. *See id.* at 2. Ms. Nieman brought H.N. to the LFPD, but the officer she spoke with allegedly declined to take a statement or investigate absent "proof." *Id.* at 2–3. Ms. Nieman then severed contact with her parents. *See id.* at 3.

In May 2023, Ms. Nieman graduated from St. Cloud State University and was admitted to a graduate program in clinical mental-health counseling at Walden University. Compl. at 3. She alleges that she submitted her acceptance letter only to MCSS. *See id.* at 2. Also in May 2023, Ms. Nieman began working for GMFS under Ms. Wimmer's supervision in GMFS's Little Falls day-treatment program. *See id.* at 3. Ms. Nieman alleges that after she privately raised an ethical concern with Ms. Wimmer about serving a

---

[2] Ms. Nieman has supplemented the Complaint with an addendum, ECF No. 1-1; 82 pages of exhibits, ECF No. 1-2; two further sets of exhibits, ECF Nos. 5, 7; and a "Memorandum of Points and Authorities," ECF No. 6 ("Memorandum"). Ms. Nieman's exhibits refer to a discrimination charge she filed with the Equal Employment Opportunity Commission against a later employer, Midwest Behavioral Healing Center. *See* ECF No. 1-2 at 54–55. But that entity is not a defendant here, and the Complaint appears to assert no claim arising from that employment against any named Defendant here. *See* Compl.

family she knew personally, GMFS abruptly terminated her employment by letter for reasons she claims were pretextual and defamatory. *Id.*; *see also* ECF No. 1-2 at 19 (June 23, 2023 letter from Lisa Merino, GMFS, to Shelby Nieman).

The core of the Complaint is Ms. Nieman's allegation that between June and August 2023, Ms. Wimmer, Officer Heurung, and Robert and Vicki Nieman—having learned of Ms. Nieman's graduate-school acceptance through "information sharing" by MCSS—agreed to punish her through her termination, a "slander letter," and an "organized crime." Compl. at 3–5. Specifically, Ms. Nieman alleges that Officer Heurung, acting out of "insecurity" and "approval seeking," paid or bribed a third party, Anthony Davis, to rape her. *Id.* at 2, 4–5. She alleges that the assault occurred later in 2023 and resulted in the birth of her daughter. *Id.* Ms. Nieman admits that she did not report the assault to law enforcement; she explains that her "previous experiences with law enforcement" led her to believe that her "concerns would [not] be heard, taken seriously, or investigated." Mem. at 4. She alleges ongoing harms, including post-traumatic stress disorder, damage to her professional reputation, community "ostracism," employment instability, "delayed" educational opportunities, and "limited" career opportunities. *Id.*; Compl. at 4.

The Complaint expressly states one cause of action: a count captioned "Civil Conspiracy." Compl. at 6. But the Complaint's caption and Ms. Nieman's other filings invoke broader theories of liability. Construing the filings liberally, the Court views Ms. Nieman as asserting the following sets of claims: (1) Ms. Nieman asserts claims under 42 U.S.C. § 1983 against Officer Heurung and the LFPD. She alleges that Officer Heurung conspired to cause her 2023 sexual assault (in violation of the Fourteenth Amendment).

She also alleges that Officer Heurung and the LFPD violated her due-process and equal-protection rights by failing to investigate or act on her earlier reports (i.e., of stalking and harassment beginning in 2013, and her 2017 report of H.N.'s abuse). (2) Ms. Nieman suggests a claim against MCSS based on its alleged unauthorized disclosure of her graduate-school acceptance letter, which she contends violated her privacy rights. She grounds this claim in the Health Insurance Portability and Accountability Act ("HIPAA"),[3] 5 U.S.C. § 552a (part of the Privacy Act of 1974),[4] and Chapter 13 of the Minnesota Government Data Practices Act ("MGDPA").[5] *See* Compl. at 2, 6; Mem. at 5. (3) The Complaint asserts conspiracy claims against all Defendants. The Memorandum cites 42 U.S.C. § 1985, 18 U.S.C. § 241, Minn. Stat. § 609.175 (and for Robert and Vicki Nieman, 18 U.S.C. § 2243). *See* Compl. at 5–7; Mem. at 4–5. The Court also construes the Complaint's repeated references to "organized crime" as invoking 18 U.S.C. § 1964(c), the civil-remedy provision of the Racketeer Influenced and Corrupt Organizations ("RICO") Act.[6] (4) Finally, Ms. Nieman asserts numerous state-law claims.[7]

---

[3] Pub. L. No. 104-191, 110 Stat. 1936 (1996) (codified as amended in scattered sections of 18, 26, 29, and 42 U.S.C.).

[4] Pub. L. No. 93-579, § 3, 88 Stat. 1896, 1897 (codified as amended at 5 U.S.C. § 552a).

[5] Act of Apr. 11, 1974, ch. 479, 1974 Minn. Laws 1199 (codified as amended at Minn. Stat. ch. 13).

[6] Pub. L. No. 91-452, tit. IX, § 901(a), 84 Stat. 922, 941 (1970) (codified as amended at 18 U.S.C. §§ 1961–1968).

[7] Liberally construed, Ms. Nieman asserts defamation claims against GMFS and Ms. Wimmer based on the termination letter. She also asserts defamation claims against Robert and Vicki Nieman for "sharing false and irrelevant information" in furtherance of an

For relief, Ms. Nieman seeks punitive damages. *See* Compl. at 7. The Memorandum also seeks various forms of compensatory damages and unspecified "declaratory and injunctive relief." Mem. at 6. Ms. Nieman further asks that this case "be confidential and non-retaliative." Compl. at 7.

II

Rather than pay this action's filing fee, Ms. Nieman submitted the IFP Application. ECF No. 2. That filing suggests that as a financial matter, Ms. Nieman might well qualify for *in forma pauperis* ("IFP") status here. But under the federal statute governing IFP proceedings, "the court shall dismiss [an IFP proceeding] at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2)(B)(ii).

When deciding whether a complaint states a claim, a court accepts the complaint's factual allegations as true and permits the plaintiff every reasonable inference. *See, e.g.*, *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 836 (8th Cir. 2014) (citing *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014)). A complaint need not include exhaustive detail, but it must "raise a right to relief above the

---

alleged "smear campaign." Compl. at 2–3. She further asserts claims for retaliatory discharge under Minn. Stat. § 181.932, "criminal defamation" under Minn. Stat. § 609.765, assault arising from the 2023 attack, and common-law civil conspiracy. *Id.* at 4–7; Mem. 4–5. Finally, she appears to assert a claim against Robert Nieman for misusing a power of attorney over her late grandmother's assets, invoking Minn. Stat. ch. 523. *See* ECF No. 5 at 27; Mem. at 5. By way of preview, all of Ms. Nieman's federal-law claims will be dismissed. As a result, I will decline to exercise supplemental jurisdiction over her state-law claims and will dismiss them without prejudice. This Order therefore does not address those claims' merits.

speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must also "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility is a "context-specific" inquiry guided by a court's "judicial experience and common sense." *Id.* at 679; *see also Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (per curiam). Courts read *pro se* complaints like Ms. Nieman's generously, but even these pleadings must allege enough facts to support each claim. *See, e.g.*, *Sandknop v. Mo. Dep't of Corrs.*, 932 F.3d 739, 741–42 (8th Cir. 2019) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

A

As an initial point, two named Defendants are not suable entities. Municipal police departments and county human-services departments are not juridical entities; they are subdivisions of the city and county governments they serve. *See, e.g.*, *Ketchum v. City of W. Memphis*, 974 F.2d 81, 82 (8th Cir. 1992); *Rosati v. Pine County*, 460 F. Supp. 3d 846, 855 (D. Minn. 2020) (citing cases, including *Ketchum*). The Complaint therefore does not—and cannot—state a claim against these Defendants.

Furthermore, even if the Court liberally construed the Complaint as asserting claims against the City of Little Falls and Morrison County, those claims would also fail. Municipalities cannot be held liable under § 1983 on a *respondeat superior* theory. Generally speaking, municipal liability exists only when an official policy, or a custom so persistent and widespread as to have the force of law, causes a constitutional violation. *See, e.g.*, *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011); *Edwards v. City of Florissant*, 58 F.4th 372, 376 (8th Cir. 2023) (quoting *Ware v. Jackson County*, 150 F.3d 873, 880 (8th

Cir. 1998)). The Complaint identifies no policy or custom of either the City or the County. Instead, it alleges discrete misconduct by one officer and unspecified "information sharing" by county personnel. Such allegations of individual conduct cannot themselves establish *municipal* liability.[8]

B

To state a § 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing cases); *accord Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013) (citing *Lind v. Midland Funding, L.L.C.*, 688 F.3d 402, 405 (8th Cir. 2012)). Ms. Nieman appears to assert two § 1983 theories against Officer Heurung: that he orchestrated the 2023 sexual assault and that he (with others) failed to investigate or act on her earlier reports. Neither theory states a § 1983 claim.

To be sure, the first theory is deeply troubling. If the Complaint plausibly alleged that a police officer arranged Ms. Nieman's sexual assault, that conduct would implicate constitutional rights (e.g., the Fourteenth Amendment's protection of bodily integrity). The problem is not the seriousness of the relevant right, but the absence of factual allegations connecting Officer Heurung to the assault. To plead a § 1983 conspiracy claim, a plaintiff must provide "allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators." *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010) (citing cases);

[8] Given this discussion, whether the "information sharing" Ms. Nieman alleges actually implicates a constitutional right need not be considered.

*accord Beckman v. Samaritan Bethany Senior Home*, No. 25-cv-3725 (JRT/JFD), 2026 WL 1556479, at *4 (D. Minn. June 2, 2026) (quoting *Murray*).

The Complaint alleges that Officer Heurung was socially "close" with Ms. Wimmer and her "peer group"; that he acted from "jealousy," "embarrassment," and "insecurity"; and that the assault was "organized crime through pay, or bribe to Anthony Davis by [Officer] Heurung." Compl. at 2, 4–5. Respectfully, these are conclusions, not factual allegations. Ms. Nieman pleads no facts describing when, where, or how any agreement was reached; any relationship (or communication) between Officer Heurung and Mr. Davis; or any basis for believing that Officer Heurung was involved in the assault (aside from what she describes as "correlation" among the events of 2023 and their timing). *See id.* at 4–7; Mem. at 4. Thus, even accepting the Complaint's well-pleaded facts as true, the Complaint permits no reasonable inference that Officer Heurung agreed to or sought the assault. The Court therefore dismisses this § 1983 theory for failure to state a claim.[9]

Ms. Nieman's failure-to-investigate theory against Officer Heurung has several legal flaws. First, the Due Process Clause does not create an affirmative right to governmental protection from private violence. *See, e.g.*, *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989); *Close v. City of Bellevue*, 179 F.4th 1109, 1113–14 (8th Cir. 2026) (quoting *DeShaney*). And "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard*

[9] Because the claim fails under the plausibility standard, the Court need not (and does not) consider whether the allegations are factually frivolous under, *Denton v. Hernandez*, 504 U.S. 25 (1992), and related cases.

*D.*, 410 U.S. 614, 619 (1973); *see also, e.g.*, *Doe v. Anoka County*, No. 25-1568, --- F.4th ----, 2026 WL 2293287, at *3 (8th Cir. Aug. 10, 2026) (quoting *Linda R.S.*). Finally, to the extent the Complaint rests on injuries to H.J., those claims belong to him, not Ms. Nieman, and she cannot raise them *pro se*. *See, e.g.*, *Crozier ex rel. A.C. v. Westside Cmty. Sch. Dist.*, 973 F.3d 882, 887 (8th Cir. 2020) (citing cases); *Barta v. Hallberg*, No. 25-cv-4486 (ECT/SGE), 2025 WL 3707016, at *2 n.4 (D. Minn. Dec. 22, 2025) (citing *Crozier*). The Complaint's § 1983 claims against Officer Heurung will therefore be dismissed.

C

It is black-letter law that § 1983 reaches only conduct fairly attributable to the state; the statute's under-color-of-state-law requirement "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation modified) (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982)); *Campbell v. Reisch*, 986 F.3d 822, 824 (8th Cir. 2021) (quoting *Sullivan*). Here, GMFS is a private agency, Ms. Wimmer is its employee, and Robert and Vicki Nieman are private individuals. Ms. Nieman's termination by GMFS is therefore private conduct, as is the abuse she attributes to her adoptive parents.

To be sure, a private party may act under color of state law if he or she is "a willful participant in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). But a plaintiff relying on this theory must plead specific, nonconclusory facts showing an agreement with a state actor. *See, e.g.*, *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 536 (8th Cir. 2014) (quoting *Pendleton v. St. Louis County,* 178 F.3d 1007, 1011 (8th Cir.

1999)); *Rock v. Hawkins*, No. 25-cv-3493 (MJD/EMB), 2026 WL 2325926, at *7 (D. Minn. July 14, 2026). As discussed above, the Complaint lacks such allegations. The Court therefore dismisses the § 1983 claims against these Defendants.[10]

D

Construed liberally, the Memorandum's reference to 42 U.S.C. § 1985 must rely on its subsection (3), which prohibits conspiracies to deprive "any person or class of persons of the equal protection of the laws."[11] 42 U.S.C. § 1985(3). One element of a § 1985(3) claim is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also, e.g.*, *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 684–85 (8th Cir. 2012) (quoting *City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989)). The Complaint attributes Defendants' motives to "jealousy," "competition," familial resentment, and retaliation for personal grievances. Compl. at 2, 4–6. Ms. Nieman

---

[10] The sexual assault itself is attributed to Anthony Davis, who is not a named Defendant. Any claim against him arising from the assault would be a common-law tort claim under state law, discussed below.

[11] The Memorandum cites § 1985 generally, describing it simply as "conspiracy to interfere with civil rights." Mem. at 5. Section 1985's other subsections have no plausible application here. Subsection (1) addresses conspiracies to prevent a person from "accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof." 42 U.S.C. § 1985(1). But the Complaint concerns no federal office or officer. The first part of subsection (2) addresses conspiracies to "deter, by force, intimidation, or threat, any party or witness" in a federal court or to influence or injure federal jurors. *Id.* § 1985(2). Again, the Complaint contains no such allegations. Finally, subsection (2)'s second part concerns conspiracies to obstruct "the due course of justice in any State." *Id.* But Ms. Nieman alleges no interference with any state judicial proceeding—and even if she had, that clause has the same class-based-animus requirement as subsection (3).

alleges no racial or other class-based animus. The Complaint therefore fails to state a § 1985(3) claim.

E

Ms. Nieman's citations to 18 U.S.C. §§ 241 and 2243—federal criminal statutes—do not support civil relief. Congress decides whether federal law creates a private right of action. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)); *Ark. United v. Thurston*, 146 F.4th 673, 677 (8th Cir. 2025) (citing *Alexander*), *denying reh'g and reh'g en banc*, 157 F.4th 931 (8th Cir. 2025), *cert. denied*, No. 25-890, 2026 WL 1780164 (U.S. June 22, 2026). Neither statute creates such a private right of action. *United States v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998) (addressing § 241 (citing cases)); *El v. Perez*, No. 1:21-CV-0096, 2021 WL 738948, at *2 (W.D. Mich. Feb. 3, 2021) (addressing § 2243), *R. & R. adopted*, 2021 WL 736401 (W.D. Mich. Feb. 25, 2021).

To the extent the Complaint's references to "organized crime" indicate that Ms. Nieman seeks to bring civil RICO claims (i.e., under 18 U.S.C. § 1964(c)), she generally must allege conduct of an enterprise through a pattern of racketeering activity. *See, e.g.*, *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (quoting *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009)); *Nguyen v. Ramsey*, No. 25-cv-1750 (JRT/JFD), 2026 WL 113477, at *5 (D. Minn. Jan. 13, 2026) (quoting *H & Q Props., Inc. v. Doll*, 793 F.3d 852, 856 (8th Cir. 2015)). Ms. Nieman's filings allege no enterprise, no predicate acts of racketeering (as defined by 18 U.S.C. § 1961(1)), and no pattern of such activity. They state no RICO claim.

F

Finally, Ms. Nieman's federal privacy theories against MCSS also fail to state a claim. Her reliance on HIPAA is a nonstarter because that statute creates no private right of action. *See, e.g.*, *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) (citing cases); *Harris v. Gillette Children's Specialty Healthcare*, No. 24-cv-1687 (KMM/JFD), 2025 WL 887442, at *3 (D. Minn. Mar. 21, 2025) (citing *Dodd*). As for 5 U.S.C. § 552a, its civil remedy lies only against an "agency" of the United States. *See* 5 U.S.C. §§ 551(1), 552a(g)(1). A county social-services department is not a federal agency, and no other named Defendant is a proper defendant under the Privacy Act.

G

Under the analysis above, the Court is dismissing all of Ms. Nieman's federal-law claims; what remains are all state-law claims. This raises an issue of supplemental jurisdiction. Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." But § 1367(c)(3) permits a district court to "decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if . . .the district court has dismissed all claims over which it has original jurisdiction."

The Eighth Circuit has provided relevant guidance here:

> A federal district court has discretionary power to decline the exercise of supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. The factors a court should consider in determining whether to exercise jurisdiction over pendent state law claims are judicial

> economy, convenience, fairness, and comity. *In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine will point toward declining to exercise jurisdiction over the remaining state-law claims.*

*Wilson v. Miller*, 821 F.3d 963, 970–71 (8th Cir. 2016) (emphasis added) (citation modified). Consistent with *Wilson*, the Court will not exercise supplemental jurisdiction over Ms. Nieman's state-law claims.

*

Under the discussion above, the Court dismisses this action in its entirety. Two housekeeping matters remain. First, Ms. Nieman asks that this case "be confidential." Compl. at 7. The Clerk of Court appears to have already restricted public access to filings containing the full names and birthdates of Ms. Nieman's minor children. If Ms. Nieman wants additional documents (or portions of documents) filed under seal, she may seek leave by filing a motion under Local Rule 5.6. Treating an entire civil action as confidential, however, conflicts with the common-law presumption of public access to judicial records. *See, e.g.*, *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013). Second, because this action will be dismissed in its entirety, the IFP Application will be denied as moot.

**ORDER**

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. This action's federal-law claims are **DISMISSED WITHOUT PREJUDICE**, under 28 U.S.C. § 1915(e)(2), for failure to state a claim.

2. The Court declines to exercise supplemental jurisdiction over this action's state-law claims.

3. Plaintiff Shelby J. Nieman's Application to Proceed *In Forma Pauperis* [ECF No. 2] is **DENIED** as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 14, 2026

s/ Eric C. Tostrud
Eric C. Tostrud
Chief Judge, United States District Court